## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STEVEN G. CRYAR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 17-00238-N |
| | ) | |
| NANCY A. BERRYHILL, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven G. Cryar brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*  Upon consideration of the parties' briefs (Docs. 13, 18) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held February 2, 2018, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 22, 24).

# I.    *Background*

On January 26, 2014, Cryar filed an application for a period of disability and DIB with the Social Security Administration ("SSA").  On November 17, 2015, he also filed an application for SSI.  Both applications alleged disability beginning October 15, 2009.[2]  After his applications were initially denied, Cryar requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review; a hearing was held on January 15, 2016.  On February 29, 2016, the ALJ issued an unfavorable decision on Cryar's applications, finding him not entitled to benefits.  (*See* R. 17 − 31).

The Commissioner's decision on Cryar's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied Cryar's request for review of the ALJ's decision on April 28, 2017.  (R. 1 − 5).  Cryar then filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.  *See* (Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the

_____

[3] Nevertheless, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383c(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

[Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the

_____

[5] The undersigned will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the

ALJ. *See id.* at 1324.

## III. *Analysis*

### A. Summary of ALJ Decision

At Step One, the ALJ determined that Cryar met the applicable insured status requirements through December 31, 2014, and that he had not engaged in substantial gainful activity since the alleged disability onset date, October 15, 2009. (R. 22). At Step Two, the ALJ determined that Cryar had the following severe impairments: bipolar disorder and personality disorder. (R. 22 – 23). At Step Three, the ALJ found that Cryar did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 23 – 25).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant

medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Cryar had the RFC "to perform a full range of work at all exertional levels[6] but with the following nonexertional limitations[:]  The claimant is limited to the simple, routine[] tasks of unskilled work involving short simple instructions and simple workplace decisions, with minimal change in the work setting.  The claimant can maintain concentration, persistence, and pace for two-hour periods.  He can interact with coworkers on a basic level, but it would be best for him to have a well-spaced work environment that would reduce the amount of interaction required.  Contact with the public should not be a usual part of the job.  He also cannot perform work at a production pace, though he can do goal-oriented type work." (R. 25 – 29).

Based on this RFC, the ALJ determined that Cryar was unable to perform any past relevant work.  (R. 29).  At Step Five, after taking testimony from a vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Cryar could perform given his RFC, age, education, and work experience.  (R. 29 – 30).  Thus, the ALJ found that Cryar was not disabled under

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria."  *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

the Social Security Act.  (R. 30 – 31).

### B.        Medical Opinion of Dr. Starkey

Evidence considered by the Commissioner in making a disability determination may include medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians."  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.  These factors apply to both examining and non-examining physicians."  *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir.  2014) (per curiam) (unpublished) (internal citations

and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

Among the medical opinions reviewed by the ALJ in this case was that from psychologist Dr. Kenneth Starkey, who conducted a consultative examination of Cryar on April 21, 2014. (*See* R. 23). The ALJ summarized Dr. Starkey's opinion as follows:

> Dr. Starkey opined that the claimant's ability to understand, remember, and carry out simple/concrete instructions appeared to be adequate, as did his ability to work independently. He opined that the claimant's ability to work with supervisors, co-workers, and the general public appeared to be marginal, as was his ability to work with pressures common to most everyday work settings. (B7F).

(R. 27). While recognizing "that the opinions of examining sources are generally to be accorded more weight than those of non-examining sources," the ALJ nevertheless assigned "little weight to Dr. Starkey's opinion that [Cryar] has a 'marginal' ability to interact with coworkers or deal with common work pressures because such opinions are inconsistent with Dr. Starkey's own diagnosis of depressive disorder 'in partial remission' and his assessment of a global assessment of functioning (GAF) score of 63." (R. 28) The ALJ assigned "the remainder of Dr. Starkey's opinions…some weight," without elaboration. (R. 28). Cryar argues that the ALJ reversibly erred "by failing to give adequate weight to" Dr. Starkey's opinion. (Doc. 13 at 4).

Unlike treating physicians, an ALJ is not required to afford special deference to the opinions of one-time examining physicians. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). Nevertheless, the law of this Circuit holds

that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Winschel*, 631 F.3d at 1179, and those reasons must be supported by substantial evidence.[7] While the undersigned expresses no opinion as to what weight Dr. Starkey's opinion should ultimately be assigned, the undersigned finds that the ALJ did not adequately explain his reasons for the weight he assigned to Dr. Starkey's opinion, and that his decision to assign more weight to the opinion of a non-examining physician was thus unjustified.

First, the ALJ stated no reason for giving only "some weight" to the portion of Dr. Starkey's opinion that was not given "little weight."

> "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

---

[7] *See, e.g.*, *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 833 (11th Cir. 2017) (per curiam) (unpublished) ("The decision to assign little weight to examining physicians' opinions is supported by substantial evidence. As one-time examiners, the physicians were not treating physicians, and the administrative law judge was not required to afford special deference to their opinions. *See McSwain*, 814 F.2d at 619. And neither of the examining physicians provided an explanation in support of their determinations of Huntley's limitations. 20 C.F.R. § 404.1527(c)(3). The physicians instead apparently relied upon Huntley's subjective complaints. And their opinions about Huntley's extreme limitations were not supported by their medical examinations of him.").

*Winschel*, 631 F.3d at 1179.[8]

Second, substantial evidence does not support the ALJ's two reasons for assigning "little weight" to Dr. Starkey's opinions of "marginal" abilities. As to Dr. Starkey's diagnosis of depressive disorder in partial remission, the ALJ does not elaborate on why he believes such a diagnosis is inconsistent with a marginal ability to interact with coworkers or deal with common work pressures, and generally "the mere existence of…impairments does not reveal the extent to which they limit [a claimant's] ability to work…" *Moore*, 405 F.3d at 1213 n.6. For all it appears, the ALJ simply substituted his own judgment as to the significance of a diagnosis for that of a medical professional. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam) (holding that the ALJ reversibly erred when he "improperly substituted his judgment of the claimant's condition for that of the medical and vocational experts"); *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th

_____

[8] An important corollary to this rule is that the Court cannot affirm an ALJ's decision on the weight assigned to a medical opinion based on reasons the ALJ did not articulate. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (unpublished) ("The Commissioner argues that Dr. Janush's opinion was rendered two years after Dempsey's last insured date and there is no specific medical evidence that Dempsey had mental limitations during the period she was insured. However, the ALJ did not offer this explanation in his decision. We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.' *See Owens*, 748 F.2d at 1516."); *Hubbard v. Colvin*, 643 F. App'x 869, 873 (11th Cir. 2016) (per curiam) (unpublished) ("Despite identifying multiple 'careless' errors in the ALJ's opinion, the district court relied on Hubbard's work history, 'along with his ability to perform basic personal tasks like driving, paying bills, and performing self-care functions,' to affirm the ALJ's decision ... [I]n relying on evidence of Hubbard's ability 'to perform basic personal tasks,' the district court affirmed based on its own post hoc rationale. However, we decline to affirm using reasoning that 'might have supported the ALJ's conclusion' but was not offered by the ALJ himself. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam).").

Cir. 1992) (Johnson, J., concurring specially) ("An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.").

As for Dr. Starkey's assessment of a 63 GAF score for Cryar, the Eleventh Circuit has explained the significance of GAF scores in disability determinations as follows:

> A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, [*Diagnostic and Statistical Manual of Mental Disorders*] 32 [(4th ed., Text Revision 2000)]. The GAF scale accounts for psychological, social, and occupational limitations, but not environmental or physical impairments. *Id*...The Commissioner has concluded, however, that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit has observed, GAF scores may be helpful in formulating a claimant's RFC, but are not essential to the RFC's accuracy, and an ALJ's failure to describe GAF scores does not render the ALJ's RFC assessment inaccurate. *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002). Similarly, the Eighth Circuit has recognized that a GAF score may have little or no bearing on a claimant's social and occupational functioning. *Jones v. Astrue,* 619 F.3d 963, 973 (8th Cir. 2010).

*Thornton*, 597 F. App'x at 613. In short, "GAF scores do not necessarily reflect a person's ability to do work." *id.* The ALJ himself further diminished any significance that could have been attached to Dr. Starkey's GAF score when he later assigned "little weight" to the various GAF scores in evidence, observing that "a GAF score is of limited value in assessing functional capacity[,] can be based upon

factors not relevant to a determination of disability, and are not designed for adjudicative determinations." (R. 28).

While assigning "little" weight to some of Dr. Starkey's opinion and only "some" to the rest, and assigning "some" weight to the opinion of consultative examining psychologist Dr. Thomas Bennett, the ALJ appeared to attach greater weight to the opinion of non-examining state agency consultant Dr. Donald Hinton because he "was able to review much of the claimant's medical records, including the assessments of both consultative examiners." (R. 28). By assigning more weight to Dr. Hinton's opinion than the opinions of the examining physicians, the ALJ indicated, at least in his judgment, that Dr. Hinton's opinion materially differed from those of the examining physicians. However, "[t]he opinions of nonexamining, reviewing physicians,...when contrary to those of the examining physicians, are entitled to little weight..." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).[9]

---

[9] This is not to say that an ALJ must always assign greater weight to an examining physician's opinion than a non-examiner's opinion. It simply means that an ALJ cannot use a non-examiner's opinion as the sole basis for discrediting an examiner's opinion. So long as an ALJ articulates adequate other reasons, supported by substantial evidence, for discrediting an examiner's opinion, an ALJ may properly assign more weight to a non-examiner's opinion. *See Huntley*, 683 F. App'x at 833 ("Substantial evidence also supports the administrative law judge's decision to assign more weight to the non-examining physician's opinion. Although the opinion of an examining physician is ordinarily entitled to greater weight than the opinion of a non-examining physician, the administrative law judge was free to reject the opinions of the examining physicians because they were not supported by the record...The non-examining physician also explained his conclusion about Huntley's residual functional capacity with specific reasons, and his opinion was consistent with the treatment records.").

Dr. Starkey's examination of Cryar occurred a mere 8 days before Dr. Hinton rendered his opinion, and Dr. Starkey's report states that the "medical evidence of record provided by the DDS was reviewed and those findings were considered in the overall assessment of the patient" (R. 440), thus indicating that Dr. Starkey largely reviewed the same evidence as Dr. Hinton.[10] As explained above, the ALJ gave no reason for assigning "some weight" to part of Dr. Starkey's opinion, and his reasons for assigning "little weight" to the rest of the opinion were based on two perceived, insubstantial discrepancies between the opinion and Dr. Starkey's notes. The ALJ gave no clear indication he found Dr. Starkey's opinion to be inconsistent with the other medical evidence of record.[11] As such, when presented with two medical opinions that, by all appearances, were based on review of the same evidence, the ALJ erred in crediting the opinion of the non-examiner over that of the examiner, absent other reasons for doing so that were both clearly stated and supported by substantial evidence.

In sum, the ALJ failed to give reasons for assigning "little" to "some" weight

---

[10] The ALJ implicitly indicates as much. In assigning only "some weight" to Dr. Bennett's opinion, the ALJ took into account that "his assessment was performed in 2012, and that he was not provided with the claimant's full medical file for review." (R. 28). The ALJ expressed no similar concerns about the evidence provided to Dr. Starkey.

[11] It could be argued that such a finding can be inferred from the ALJ's emphasis that Dr. Hinton's opinions "are consistent with th[e] evidence, and are supported by the relatively benign mental status examination findings contained within records submitted at the hearing level." (R. 28). To affirm the ALJ's decision based on such an inferential leap, however, would be inconsistent with this Circuit's binding precedent requiring an ALJ to "state with at least some measure of clarity the grounds for his decision…" *Winschel*, 631 F.3d at 1179 (quotation omitted).

to Dr. Starkey's opinion that were both clearly articulated and supported by substantial evidence. Thus, the ALJ was not entitled to assigned greater weight to the opinion of a non-examining physician. These mistakes constitute reversible error.[12] Thus, the Commissioner's final decision denying Cryar's applications for benefits is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).[13]

Cryar requests that his case be remanded to the Commissioner with directions he be "found disabled," and only requests a remand for further proceedings in the alternative. (Doc. 13 at 7). Generally, remand to the Commissioner for further proceedings "is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.,* Cryar has failed to convince the undersigned that this standard is met here.[14]

---

[12] The Commissioner has not argued harmless error as to this claim, and the undersigned finds no independent reason to believe that the ALJ's errors in this regard were harmless.

[13] In light of this determination, the undersigned finds it unnecessary to address Cryar's other claim of error that the vocational expert's testimony failed to satisfy the Commissioner's burden at Step Five.

[14] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and

Moreover, the reversible error in this case stems from the ALJ's failure to state sufficient reasons for assigning "some" to "little" weight to a one-time examining physician's opinion. As noted previously, the Commissioner is not required to afford special deference to such an opinion, and the undersigned finds no reason to believe that the Commissioner would be unable, on remand, to offer clearly articulated, substantially supported reasons for assigning the same weight to Dr. Starkey's opinion.[15] Accordingly, the undersigned finds it appropriate in this case to remand for further proceedings.

---

there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

[15] Again, the undersigned expresses no view on what weight Dr. Starkey's opinion should ultimately be assigned.

# IV. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued April 28, 2017, denying Cryar's applications for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Cryar a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Cryar be awarded Social Security benefits on the subject applications following this remand, the Court hereby grants Cryar's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[16] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of

---

[16] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 8th day of March 2018.

_/s/ Katherine P. Nelson_
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**